May it please the court. My name is Chad Bowers. I represent, through the CJA panel, Mr. Woods. There's two grounds here today under the Rule 33 issue on which Mr. Woods could be afforded relief. One of those being the ex post facto ground I'd like to address first. As the court is well aware, there's only one district court case out there, Gene, from Alabama, that actually makes the decision regarding a new trial on the grounds of ex post facto. Just within the briefs that deal with what is ex post facto in the context of this case, the decisions that are directed on point, there's, as I counted, eight or nine different, slightly different definitions used by the court in determining, various courts, in determining whether the issue was one of substance or procedure. Generally, those definitions come down to whether a change involves any additional elements of crime or additional punishment, and a language that's frequently referred to is whether the change involves any substantial personal rights. In this particular instance, the Rostovsky court from the Sixth Circuit, in deciding that the retroactive application of the rule was not ex post facto, acknowledged that the difference between substance and procedure can prove to be elusive. And while I can't point to any specific factor, elusive or not, this is about as procedural as you can get. I mean, if this rule isn't procedural, then there are no procedural rules. All you have to fall back on at that point is to say that any time a rule is passed that harms some defendant, it becomes ex post facto. I mean, this isn't even a rule that necessarily makes things more onerous. It used to be two years from the day the judgment became final. This is now three years from the time of the verdict. In some cases, this would be a more generous rule. My fallback position is the language that's standard in the Supreme Court's order regarding the justice and practicability of enforcing these statutes. In this particular case, it becomes a more factually intensive issue. And you've seen Ross, right? I'm sorry? You've seen the Ross case? The Ross case? The government submitted it as a supplemental authority. It's a 28-J letter. I don't believe I did receive that from the government, Your Honor. I apologize to find myself in this position. Well, apologies are not needed. I mean, if you didn't get it, you didn't get it. It's unfortunately unhelpful to your position. It would have been helpful for you to have seen it. But if you didn't get it, you can't really talk about it. Does the government have an extra copy of Ross? Well, maybe you can give it to defense counsel. You send that letter out in the normal course? It was sent on Tuesday, Your Honor. Both the night of Tuesday's case were last minute. I did research, and it was sent out fast. Unfortunately, that was approved by the Supreme Court. Do you have the letter of enclosure? Judges, I'm certainly not disputing that it was sent. I just left maybe too early yesterday afternoon. Yeah, no, no, I'm not. Well, it's going to be difficult for you to address it. Ross has a long footnote discussing the interplay between new and old Rule 33. Yeah. You know what we could do? We just stop here. Let you go read it. We'll call the next case. All right. Thank you. The discussion is at page 83, 44, and there's a sentence from which footnote six is anchored. And so you need to read that sentence, and then you need to read footnote six. So it's a sentence which leads into footnote six and footnote six itself. Thank you, Judge. We'll try this again. Thank you for affording me to read the brief. And, Ross, that's exactly the direction I was headed in. One of the things that I wanted to point out that I think is salient to this case that wasn't emphasized sufficiently in the briefs is, while it's not fully explored when exactly in the trial record, when exactly my client received the transcripts that contained the information that his new trial was based on, the docket at page 53 in the excerpts of record does indicate that it wasn't returned to him until April of 2001, which was briefly within the time that he could have still filed the motion. And been timely under the new Rule 33. But this situation is very akin to Ross in that he files the motion shortly. My client, much like Ross, files the motion for a new trial relatively shortly after the appeal. In Ross, the information was gleaned during oral argument. In my client's situation, he discovered it in the transcripts after the appeal. And in both cases, he misses, they miss the deadline under the new rule by a matter of several months. Well, if I understand Ross correctly, what Ross says is that the Supreme Court has expressed a preference for the new rule. And that's the rule that presumptively applies unless the district court exercises discretion to apply the old rule, which happened in Ross, didn't happen in your client's case. And we test for abuse of discretion whether or not the district court picked the right rule. That's what I understand Ross to say. And I think that's correct. My concern here is if we read the order from the district court in this case, there's no consideration of anything beyond the ex post facto. That's it. But the court was aware there were two rules and decided which one to pick. Was there a situation where the court wasn't aware of the change in rules? No, I mean, we have to presume that obviously the court's aware of the rules. There would be nothing to consider ex post facto about if the court weren't aware of the two rules. No, right. I understand. Obviously the court's aware of the two rules. And it wound up applying the rule that we in Ross said was the one that the Supreme Court favors and that presumptively applies, which is the rule currently in force. How can we say that's an abuse of discretion? I'm sorry, I didn't hear you. How can we say that's an abuse of discretion? Well, again, I guess my concern is that I don't know that the trial court in this case considered whether it was just impracticable to do this. I think the trial court got to the ex post facto inquiry and left it at that. I don't think the trial court developed the record with respect to why this delay was there as to whether it was appropriate for my client to take this additional time to file it or not. Now, I guess the fact that there is an amended rule sort of. Are you are you making some sort of tolling argument? No, I'm not. No, I'm not. I'm just I'm sure. Well, I mean, are you saying that? You see, I'm making a tolling argument. I'm just asking. I mean, are you saying he couldn't have complied with the with the three deadline because he didn't have the record? Absolutely. Absolutely. And unfortunately, that record isn't sufficiently developed to trial that I can emphatically make that statement. But the record, the excerpts of record do indicate that those transcripts weren't returned from the circuit until April. And we're all aware, I assume, of the problems involved with getting records to inmates. And I think if you look at the fact that those records came back from the district or back to the district court in April, and this motion was filed in September, and he's only two months late, that under that set of circumstances, if you want to call it tolling, then that's what I'll call it. But my concern is under the new rule, one of the advisory committee's points is we want we don't want to necessarily take time from these defendants, so we're going to give them we're going to make it three years instead of two from the end of the appeal. But if you look at the fact that this evidence wasn't available to my client, his basis for the new evidence in the transcript, we have to assume that because it wasn't developed. Let's assume that. He files this within five months. What was the evidence again? The evidence was the statement made at his co-defendant's trial by the agent who was present in his trial. Okay? And that, his co-defendant was tried shortly after him, so I'm sure the assumption as well. He should have or could have had those transcripts way back in August of 88, 98, right after his trial. But my understanding is he didn't. And if we look strictly at the record in the docketing statement, it would suggest that he didn't have access to that information. I mean, what about just and that concept of just and practicable? Well, to me, Judge, that sounds like, Judge Pegerson, I'm sorry, that sounds like fair. And what I'm trying to clarify, and not maybe doing a very great job of it with the Court here today, is that while objectively it looks  it looks like, in the case of the case of the case of the case of the case of the case, it looks like, that's a fair argument. Have you been arguing that? I'm sorry. What's that? Have you been arguing that? That's what I've been trying to argue. But I can explain it. I never heard those words. Just and practicable? Yeah. I'm sorry. I heard that as ex post facto. Well, right. And you asked me to give my best argument. And I thought I had stated that outside of ex post facto, it's that language. You know, okay. That's the ex post facto is not your point. No, that's not. This is all under the rubric of just and practicable, which to me means fair, which in this case, if you want to objectively look at it and say, well, just like Grostovsky, just the Eleventh Circuit doesn't even bother to really consider it. They say, well, they do. You'd apply the old rule. I'm sorry. What's that? You'd apply the old rule. Absolutely, sir. Okay. Absolutely. You want to stay 55 seconds? Oh, sure. Thank you very much. I appreciate that. Good morning. My name is Karen Kenney. I'm Assistant United States Attorney from the District of Nevada. Respectfully, gentlemen, the district court did, knowing its authority, she did not abuse its discretion in finding that it was just and practicable in this case in order to apply            I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry.     I just wanted to make that clear so I don't get lost on both lands. But did he exercise discretion? I'm looking in Exactly what he said in his order and the order says he did. There's no jurisdiction, no jurisdiction. Therefore, end of story. Yes, I believe the honor of the might different between Rossloh in this case in Ross kilogram of a trial judge did exercise her discretion and decide whether it was fair using counsel's term, but in the case we're about now, he didn't exercise it at all. Well, I would argue. I'm sorry. So I would argue that he did. No, actually, I would argue that he did in order looking at it, looking at the amended rule 33 and then deciding that he did not have jurisdiction. I think it's inherent that he was aware of that. He come out to say the exact words I'm exercising my discretion. Yeah. No, he did not, Your Honor. But I think that it is it is just fundamentally inherent that he understood that he could apply either or of those and other things fundamentally inherent. Well, I believe, Your Honor, again, by the district court stating I'm going to apply a lot about that in this other case, too. But I think again, Your Honor, by saying I'm going to apply the amended rule is saying that he was obviously aware that there was a previous rule and the district court was aware that has the discretion in deciding whether or not it even had jurisdiction to take that case, which rule it was going to apply. And it shows to apply the. He applied the new rule. Yes, Your Honor. I think if you look at the way this issue has been addressed in other circuits, specifically the 6th and the 11th, what it fundamentally comes down to, what I perceive from the cases is a kind of chronological fairness test. And the cases in which the courts have held that during pending cases when the new rule was adopted, in cases such as Bowler, in West, in Soler, in Camacho, when defendants have been unduly prejudiced, specifically in Bowler, the individual, his time to file had lapsed five months before the amendment even came into existence. In those cases, which is correct, it should not apply because the defendant doesn't have a chance  However, in other cases. When they adopted the new rule, didn't they, by some sort of an amendment or, I forget, legislative history or something, say that the new rule shall govern all proceedings insofar as just and practicable? You're correct, Your Honor. So does that require the district court judge to determine whether it is, in fact, just and practicable before he applies it or doesn't apply it? Yes. He didn't. I believe he did, Your Honor. That's in the April 1998 order. It says, insofar as just and practicable in pending cases. Here in this court, in the District of Nevada, the judge did. The judge and the court looked at the issue, Your Honor, and held, based upon the fact, here the defendant had 31 months in which to file. Where is that in the record? I haven't seen that, what you're talking about. I'm actually speaking of the case law, Your Honor. I'm not directing it to the order from the court. Where did Judge George exercise discretion? Where is it in the record? I believe, again, Your Honor, as I said before, though the judge does not use specific words, I am exercising my discretion, which I submit to this court that it's not a magic word, that it needs to be in the order. What did he say about being just and practical? Your Honor, I believe by him saying and looking at it he did not, Your Honor. Any time? No. Never? No. That I'm aware of, Your Honor. But, again, I would say that the approach to this case should not be magic talisman words that automatically guarantee. Approach to this case. We know the district court was aware there were two rules. Correct, Your Honor. And knowing that there were two rules selected the one. Yes. And your position is that that's an exercise of discretion. Yes. Because in being a. . . In between the two rules. Being aware of the two rules, Your Honor, I would, the district court would have to look at the amended rule, and in the amended rule it says insofar as fair and practical as possible. The court would have to look at that and decide to. . . How do you know he was aware of the two rules? How do you know he was aware of the two rules? Because he came in his order, Your Honor, he actually decided that he did not have jurisdiction based upon the new rule, which is the amended rule in December of 1998. He looked at that and decided I do not have jurisdiction over this case because of this rule. And I am just arguing to this Court that if he's applying that rule, then it follows that he had read it. And in reading it, he would have seen the words insofar as just and practical. The question that's raised now is how do we know that he was aware there was an old rule? You know, I think because it actually, the order states applying the new rule. So. . . Isn't that the big gap in the existence of a new rule? I'm sorry. I didn't hear you. Does it say new rule or does it say. . . I believe it says amended rule, Your Honor. Yes. So is that first an amended rule or. . . I believe it's amended rule, Your Honor. So what does he actually say to let us know that he was aware there was another rule he might apply, there was a prior rule? I guess my argument, Your Honor, is simply that if he's referring to the amended rule, that the logic is inherent that he was aware that there was a previous rule, Your Honor. Again, the. . . Was there an ex post facto argument made to him? Yes, there was an ex post facto made, yes, Your Honor. In necessity he would know that there was an amended rule because he's being argued that he should apply the old rule. Correct, Your Honor, because it has been under attack under the ex post facto theory. An ex post facto argument was made. Yes. And was a just and practicable argument made? My understanding from reading the order, Your Honor, and it was very brief, as the Court is well aware, it was only the first part of the district court's order, that it was addressing itself to the defendant's motion, which I think concentrated more upon the ex post facto concern of the two prongs as opposed to just and practicable. It concentrated on the ex post facto. When you say whatever was said by Judge George, is that in the order, the written order? Is that what you're talking about? Yes, and that's the only information that I have, Your Honor, with respect to the Court's analysis of it in the written order. I'm looking at that right now at page three, and there's no mention of just and practicable, nothing at all. Oh, I can see that, Your Honor. Just says he's aware of Rule 33, and he's aware there is a change in the procedure. Yes. He says because it was filed more than three years after the jury returned its verdict. Yes. It's untimely. I'm sorry? It's untimely. Yes. It isn't the next step he has to go then, under Congress's instructions, amendment whatever it was, the judiciary, the history, he has to determine whether it's just and practical. It's not just first find which rule and leave it at that. He has to find whether it's just and practical. Isn't that right? Yes, Your Honor. And where did he? I mean, again, I would just go back to my argument, Your Honor. Though the words just and practical there, as Judge Kaczynski has stated, the fact that he was aware of the amended rule, the fact that he was looking and making analysis as to the ex post facto argument, I think the record is such that it demonstrates that he was aware of it. I think there's nothing on the opposite, sir. I don't think there's anything that shows he wasn't aware of it. There's actually no language whatsoever in that order that in any way indicates that he was unaware of the fact that it was his – the Court was aware of its own discretion in this matter, Your Honor. The Court was aware of its standard. Were you the – represented the U.S. Attorney's Office at that time? No, Your Honor. There was, I think, four other attorneys involved. Where are they? I believe one is in another U.S. Attorney's Office in – One is where? Another U.S. Attorney's Office, Your Honor, somewhere else in the country. I'm not exactly where. But I think, again, if I can get back to my argument, the way the appellate courts have looked at – None of them got and said, one minute, one second, please, Your Honor, what are you going to do about just impracticable? Are you going to say anything about that? Not that I'm aware of, sir. I used to have lawyers do that to me all the time. Oh, yeah. You missed it. You missed it. That may have happened, Your Honor. I'm not aware of it. There's a lot of stuff there. I didn't miss anything. I'm sure you – I had a checklist that I quit, but – I don't know if I said it. We had a lot of eager beavers down there. I have to say, calm down. I'm coming to it. I'm coming to it. Have a glass of cold water. I don't think that happened in our case, Your Honor. Although, I don't know. I haven't seen the record. I think 31 months. Judge George? It is, sir. Yeah. I don't think you'd be amused by that. I don't think I would go over well on Judge George's. Judge Ferguson's point is a good one. I've had assistants say that to me quite often. And I do forget stuff. They point it out. I agree. But I think in terms of this case here, the defendant had 31 months in which to file his motion. 31 months. What about the argument that he really couldn't? So what I've characterized as a trolling argument, that the record was not available.  I don't know. Well, my answer to that, Your Honor, would be twofold. First, it's speculative. We don't know in terms of what was the time period in which he had the record. The defendant was sentenced in July. His co-defendant went to trial in August. Okay. So even assuming that the record didn't get to him in April, then I think the focus then becomes under newly discovered evidence, would the defendant have prevailed? And, again, it's speculative because we don't know what the newly discovered evidence was. We don't know what that agent said. And we don't know if we would need the test of newly discovered evidence. Was it likely to produce an acquittal? You know, was it something in which a due diligence would have discovered? I think it's so speculative, Your Honor, that it's hard to make a kind of distinct analysis of it because there's so many facts that are unknown. Isn't Ross easy to distinguish because Judge Huff said the magic words? It is, sir.  Well, but Judge Huff exercised her discretion. Yes. And, again, my argument is that Judge George did the same hearing, Your Honor. The defendant had 31 months in order to file his motion. Okay. All right. Thank you, gentlemen. Thank you. You want to say anything more? Just very briefly. Are you at the hearing? No, sir.  I've only been here for a couple of years. Everybody just leaves town on these cases. Nomadic people there in Vegas, Judge. Except Mr. Woods, who's sort of stuck. Well, he's sort of involuntarily staying in the same place for a period of time. I'm sure he would gladly leave the case, too, if he could. Yeah. I'm sure he would, Judge. Much of what you talked about, and with my little remaining time, I just want to emphasize that this just and practical language is not readily apparent to a judge that's reading the rule. And while Judge George is extremely qualified, as you've pointed out, it's part of the Supreme Court attachment to it. It's not there on the face of the language in his order. The question is whether when a judge exercises discretion, he has to actually articulate the standard as to what discretion he's exercising or whether we can presume that he's familiar with the statutory language and that when he chooses one rule over the other, that he has applied this legal standard. And, you know, there's a school of thought that says if you don't say it on the record, we don't know what happened. But we don't. We do that mostly to immigration judges. We don't do it to real judges. Well, I don't know that we need to go that far, though. And here's the distinction why in this case. If that standard that needs to be considered in order to have exercised abuse of discretion is inherent in the rule or inherent in the statute or inherent in what's being applied, it's in the plain face of it, then, yes, we can look at it and say this judge, we presume read it, we presume this judge understands it, and we presume that was factored into his order. But when that section or whatever standard is being considered comes from a supporting document that isn't readily apparent, if you copy and look at Rule 33, you're not going to see anything about just impracticable. The only place that comes into play is if you go further and look at the order that the Supreme Court sent with that to Congress. So in that situation where it's not readily apparent that it's part of what is going to be read, I think some consideration should be given. Let it make a nice simple rule, wouldn't it? Okay. Your time's up. Thanks. Thank you, Justice. All right. Number three, that's Valencia v. Canberra. That's submitted. Number four, United States v. Cullum Garland, Henderson, Barnes, Jenkins. Thank you.
judges: Pregerson, Kozinski, Rhoades